SHARON LYNN LOVELACE, Administratrix of the Estate of SHAYLA MEAGEN MOORE, and SHARON LYNN LOVELACE, Individually v. CITY OF SHELBY and THOMAS LOWELL LEE

No. 312A99

(Filed 7 April 2000)

**Immunity— public duty doctrine—911 operator—delay in dispatching fire department—inapplicability**

The public duty doctrine will not be expanded to insulate a city from liability for alleged negligence of a city 911 operator in causing the death of plaintiff's daughter in a fire at plaintiff's home by failing timely to dispatch the fire department to plaintiff's home after receiving a call reporting the fire. The public duty doctrine, as it applies to local governments, is limited to the facts of *Braswell v. Braswell*, 330 N.C. 363 (1991).

Appeal pursuant to N.C.G.S. § 7A-30(2) from the decision of a divided panel of the Court of Appeals, 133 N.C. App. 408, 515 S.E.2d 722 (1999), reversing and remanding an order entered 12 March 1998 by Payne (Ronald K.), J., in Superior Court, Cleveland County. Heard in the Supreme Court 15 November 1999.

*Deaton & Biggers, P.L.L.C., by W. Robinson Deaton, Jr., and Lydia A. Hoza; and Hamrick, Mauney, Flowers, Martin & Moore, by Fred A. Flowers, for plaintiff-appellant.*

*Scott, Hollowell, Palmer & Windham, LLP, by Martha Raymond Thompson, for defendant-appellee City of Shelby.*

ORR, Justice.

Plaintiff, Sharon Lynn Lovelace, individually and in her capacity as administratrix of the estate of her deceased daughter, Shayla Meagan Moore (Shayla), initiated this action against defendants on 5 November 1997. Plaintiff alleged that defendant City of Shelby (City) was negligent in the dispatch of fire-fighting personnel to plaintiff's home, resulting in Shayla's death, and that the City, through its negligent dispatch of fire-fighting personnel, caused plaintiff severe emotional distress. Plaintiff also asserted claims against defendant Lee, but he is not a party to this appeal. On 16 January 1998, the City filed a motion to dismiss the complaint pursuant to Rule 12(b)(6) of the North Carolina Rules of Civil Procedure on the ground that plaintiff failed to state a claim upon which relief could be granted.

On 11 March 1998, the trial court granted plaintiff's motion to amend the complaint to allege additionally that the City's negligence was the direct and proximate cause of Shayla's death and that the City's actions created a "special duty" between plaintiff, Shayla, and the City. On 12 March 1998, the trial court denied the City's 12(b)(6) motion.

The City appealed to the Court of Appeals, assigning as error the trial court's denial of the 12(b)(6) motion because "plaintiff has failed to state a claim upon which relief can be granted under the Public Duty Doctrine." The Court of Appeals reversed the trial court's 12 March 1998 order and remanded to the trial court for entry of an order dismissing plaintiff's case. *See Lovelace v. City of Shelby,* 133 N.C. App. 408, 414, 515 S.E.2d 722, 726 (1999). The Court of Appeals concluded that plaintiff had not alleged facts that adequately established the "special duty" exception to the public duty doctrine. *See id.* at 413, 515 S.E.2d at 726. Judge Wynn dissented on the grounds that plaintiff alleged sufficient facts to establish negligence and alleged sufficient facts to demonstrate that the case fell within the "special duty" exception to the public duty doctrine. *Id.* at 414, 515 S.E.2d at 726 (Wynn, J., dissenting). Based on the dissent, plaintiff appealed to this Court pursuant to N.C.G.S. § 7A-30(2).

Because this appeal is based on defendant City's motion to dismiss, we must treat plaintiff's factual allegations as true. *See Cage v. Colonial Bldg. Co.,* 337 N.C. 682, 683, 448 S.E.2d 115, 116 (1994). The facts, as alleged, show that on 29 June 1996, plaintiff and her three minor children, including Shayla, resided at 706 Calvary Street, Shelby, North Carolina, when a fire was discovered inside the house.

Their home was located 1.1 miles from the Shelby fire station. Plaintiff exited the house with two of her three minor children, but Shayla failed to follow them. The fire was reported to the City by calling its 911 emergency number. According to the pleadings, Helen Earley, the 911 system operator for the City, delayed dispatching the fire department until six minutes after she received the call reporting the fire. The fire department did not arrive at plaintiff's home until approximately ten minutes after that initial 911 call was placed.

While plaintiff and others waited for the fire department to arrive, Shayla could be heard inside the house talking and calling for her mother. Bystanders, including police officers who arrived on the scene before the fire department, made several attempts to enter the house, but the intensity of the flames thwarted their rescue attempts. Shayla was alive inside the house for several minutes immediately following the beginning of the fire and prior to the fire department's arrival.

The issue in this case is whether the public duty doctrine insulates the City of Shelby from liability for the alleged negligence of Helen Earley, a 911 operator for the City, and, if so, whether plaintiff sufficiently alleged facts to support the "special duty" exception to the public duty doctrine.

As early as this Court's decision in *Hill v. Alderman of Charlotte*, 72 N.C. 55 (1875), the state and its agencies have been immune from tort liability under the common law doctrine of sovereign immunity. Sovereign immunity continues to be a viable protection against tort claims for local governments. It is subject, however, to certain legislatively created exceptions allowing local governments to purchase liability insurance to protect the public, *see* N.C.G.S. §§ 153A-435 (1999) (applying to counties), 160A-485 (1999) (applying to cities), and court-made exceptions for public officials involved in conduct that is either corrupt, malicious, or outside of and beyond the scope of their official authority, *see Meyer v. Walls*, 347 N.C. 97, 112, 489 S.E.2d 880, 888 (1997).

This Court adopted for the first time the common law public duty doctrine and explained its application to local governments in *Braswell v. Braswell*, 330 N.C. 363, 410 S.E.2d 897 (1991). We stated in *Braswell*:

> The general common law rule, known as the public duty doctrine, is that a municipality and its agents act for the benefit of

**LOVELACE v. CITY OF SHELBY**

[351 N.C. 458 (2000)]

the public, and therefore, there is no liability for the failure to furnish police protection to specific individuals. This rule recognizes the limited resources of law enforcement and refuses to judicially impose an overwhelming burden of liability for failure to prevent every criminal act.

*Id.* at 370-71, 410 S.E.2d at 901 (citation omitted).

The holding in *Braswell* was specifically limited to the facts in that case and to the issue of whether the sheriff negligently failed to protect the decedent. This limitation is consistent with the origin of the public duty doctrine in the United States in *South v. Maryland ex rel. Pottle*, 59 U.S. 396, 15 L. Ed. 433 (1855).

While this Court has extended the public duty doctrine to state agencies required by statute to conduct inspections for the public's general protection, *see Hunt v. N.C. Dep't of Labor*, 348 N.C. 192, 499 S.E.2d 747 (1998); *Stone v. N.C. Dep't of Labor*, 347 N.C. 473, 495 S.E.2d 711, *cert. denied,* —— U.S. ——, 142 L. Ed. 2d 449 (1998), we have never expanded the public duty doctrine to any local government agencies other than law enforcement departments when they are exercising their general duty to protect the public, *see Isenhour v. Hutto*, 350 N.C. 601, 517 S.E.2d 121 (1999) (refusing to extend the public duty doctrine to shield a city from liability for the allegedly negligent acts of a school crossing guard). We decline to expand the public duty doctrine in this case. Thus, the public duty doctrine, as it applies to local government, is limited to the facts of *Braswell*.

Because we decline to expand the public duty doctrine as it applies to local governments, we reverse the decision of the Court of Appeals and remand to that court for reinstatement of the trial court's order denying defendant's Rule 12(b)(6) motion to dismiss.

REVERSED.